**KEEPSAKE, INC., a Florida corporation and Loura Dobbs, an individual, Plaintiffs,**

v.

**P.S.I. INDUSTRIES, INC., et al., Defendants.**

**No. 98–1249–Civ–ORL–22B.**

United States District Court, M.D. Florida, Orlando Division.

Jan. 29, 1999.

Herbert L. Allen, Brian R. Gilchrist, Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A., Orlando, FL, for Keepsake, Inc. and Loura Dobbs.

John Robert McDonough, Nicholas A. Shannin, McDonough, O'Dell, Beers, Wieland & Krakar, Orlando, FL, for P.S.I. Industries, Inc.

I. William Spivey, II, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Orlando, FL, for K–Mart Corp. and Walgreen Co.

BAKER, United States Magistrate Judge.

## BACKGROUND

According to the Complaint, Defendant's motion, Plaintiff's response (Doc. No. 19), and the Affidavits filed by the parties, Plaintiff Keepsake, Inc. and Defendant PSI Industries, Inc. were parties to an Exclusive Distributorship Agreement regarding a product (a disposable, single-use camera that creates pictures with printed messages) using certain technology developed and patented by Plaintiff. As the exclusive distributor, PSI undertook to seek international patent protection and trademark protection for one of the patents related to the camera film development process (herein "the '146 patent"). Enhancements and improvements to this technology are allegedly the subject of the other patents referenced in Paragraph 11 of the Complaint. In order to secure trademark and international patent protection,[1] PSI retained Keepsake, Inc.'s counsel, ALLEN, DYER, DOP-

---

1. The trademarks and patents sought to be registered were to be in Plaintiff's name, but were also necessary in order to protect PSI's exclusive distributorship interest.

PELT, MELBRATH & GILCHRIST, P.A. (herein "Allen, Dyer").

In addition to seeking trademark and international patent protection, Allen, Dyer represented PSI in another matter against other parties in state court relating to the patented technology and the distribution of the product. The representation lasted from approximately late 1995 – early 1996 to September of 1997. During this time, Allen, Dyer invoiced PSI, and PSI paid Allen, Dyer over $25,000.00 for legal services. At all relevant times, Allen, Dyer continued to represent Keepsake, Inc.

In October 1996, Allen, Dyer sent a proposed fee agreement to PSI regarding prosecution of the state claims (Doc. No. 15, Exhibit 10). In the cover letter accompanying the fee agreement, attorney Stephen Milbrath noted: "As we discussed on Friday, there is at least a potential conflict of interest involved in my law firm's joint representation of PSI Industries, Inc. and Keepsake, Inc." Accordingly, Allen, Dyer placed a conflict of interest provision in the fee agreement (Provision 15, p. 4). Among other things, the agreement provided:

> Client [PSI] has been informed that the Law Firm currently represents KEEPSAKE, INC., the licensor of certain technology to Client, which technology is relevant to the representation contemplated by this agreement.... Client has also been informed that joint representation could give rise to further information not now foreseen specifically that might give rise to a dispute between Client and KEEPSAKE, INC. that could require the Law Firm to withdraw from the representation of both Client and KEEPSAKE, INC.... [2]

According to the Complaint, Keepsake terminated the Exclusive Distributorship agreement with PSI, effective February 1998, and brought a breach of contract action against PSI in state court, allegedly due to PSI's failure to pay fees due under that Agreement. The Complaint further alleges that PSI possessed certain rights to continue to sell the existing inventory of the products following termination, under the Agreement. The Complaint purports to detail certain alleged wrongs that PSI has committed that exceed these post-termination rights, with respect to PSI's continued marketing of the product containing the patented technology. Plaintiff has sued PSI (and certain retailers) for false advertising under 15 U.S.C. § 1125(a)(1)(b), in "manufacturing, selling and distributing ... camera Products with false and misleading film expiration dates" (Count One); common law unfair competition in "manufacturing, selling and distributing ... camera Products with false and misleading film expiration dates" (Count Two); against PSI only, for copyright infringement in continuing to use photographs which PSI had a license to use during the course of the Distributorship Agreement, but which Plaintiff contends expired after the Agreement was terminated (Count Three); and two counts of patent infringement for allegedly selling products that were not part of PSI's inventory at the time of the termination of the Agreement (Counts Four and Five).

Keepsake is represented in this litigation by Allen, Dyer.

## ANALYSIS

There is no dispute that an attorney owes a duty of confidentiality and loyalty to his or her clients, including former clients. *See* Rules regulating The Florida Bar 4–1.6(a); 4–1.7; 4–1.9; 4–2.2 and 4–1.9.

Rule 4–1.9 provides:

**Conflict of Interest; Former Client**

A lawyer who has formerly represented a client in a matter shall not thereafter:

a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

b) use information relating to the representation to the disadvantage of the former client except as rule 4–2.6 would permit with respect to a client or when the information has become generally known.

---

2. The copy of the Fee Agreement submitted to the Court is not executed, nor is it clear from the record whether the parties ever formally entered into the Fee Agreement.

The Eleventh Circuit has developed a two-pronged test for disqualification of counsel: 1) the party seeking disqualification must prove that it once had an attorney-client relationship with the opposing lawyer; and 2) the movant must show that the matters embraced within the pending suit are substantially related to the matters involved in the previous representation. *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 728–9 (11th Cir.1988). The burden of proof to establish grounds for disqualification is on the party moving for disqualification. *Moyroud v. Itek Corporation*, 528 F.Supp. 707 (S.D.Fla.1981) (holding attorney's prior representation of defendant in an action involving patents in the photo-typesetting field did not preclude representation of plaintiff in the present suit against defendant for alleged infringement of other patents in the typesetting field). Here, PSI argues that Allen, Dyer's prior joint representation of PSI and Keepsake precludes it from representing either party in this action. The Court agrees.

### Attorney–Client Relationship

While acknowledging the "fact that [Allen, Dyer] performed legal services for PSI," Plaintiff nonetheless argues that "it is not a foregone conclusion that an attorney-client relationship existed" between PSI and Allen, Dyer (Doc. No. 19, at p. 5). The record before the Court shows otherwise. It is beyond dispute that Allen, Dyer undertook to perform and did perform legal services for PSI, drafted and sent to their "Client" [PSI] a Fee Agreement regarding the scope of certain services to be performed, billed PSI for the performance of those services, received payment from PSI and at all relevant times acknowledged the "joint representation." In Florida, the test for determining the existence of an attorney-client relationship hinges upon the client's reasonable subjective belief that he is consulting a lawyer in that capacity with the intention of seeking professional legal advice. *The Florida Bar v. Beach*, 675 So.2d 106, 109 (Fla.1996). PSI has so averred and the Court finds that no other conclusion can be reached but that an attorney-client relationship existed between PSI and Allen, Dyer.

That the services also benefitted Keepsake is of no moment. An attorney owes *all* of his clients the duty of loyalty. Indeed, Allen, Dyer recognized this itself in discussing the conflict of interest issue with both Keepsake and PSI, and drafting the Fee Agreement to provide for the possibility that the Law Firm could be required to withdraw from the representation of "both Client and KEEPSAKE, INC." should a dispute arise between the two. Allen, Dyer's purported disavowal of its attorney-client relationship with PSI now that such a dispute has arisen is wholly without merit. *See Brennan's Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168 (5th Cir.1979) (where attorney representing corporate defendants in trademark infringement action had previously represented corporate plaintiff and defendants jointly and such representation substantially related to matters raised in infringement action, attorney properly barred from representing defendants due to conflict of interest.)

### Pending matters substantially related to prior representation

Having established the existence of an attorney-client relationship, PSI must now show that the current matters are substantially related to the matters which are the subject of Allen, Dyer's prior representation of PSI. Plaintiff argues that PSI has failed to meet this burden in that: "PSI fails to address with specificity how this lawsuit has anything to do with the contract [the Distributorship Agreement] or how any prior "representation" has anything to do with representation of PSI on the agreement [the Distributorship Agreement]" (Doc. No. 19, p. 8). The Court finds that PSI has shown that the pending lawsuit is substantially related to the prior representation, warranting Allen, Dyer's disqualification.

As detailed above, the lawsuit consists of allegations that PSI, in essence, exceeded its "limited rights" granted in the Distributorship Agreement, to continue post-termination marketing of the remaining inventory of the Products, in a certain manner. The Agreement itself is mentioned numerous times, throughout the Complaint. Clearly, con-

 

struction of the terms of the Distributorship Agreement and the extent of the licenses and rights it grants is essential in establishing or defending against the various counts. For Allen, Dyer to argue that this lawsuit "has nothing to do with the contract" is to ignore the plain language of the Complaint that *it drafted.*

Having established that the lawsuit is inextricably tied to the relationship between the parties, it is incumbent on PSI to establish that the business relationship between the parties is substantially related to Allen, Dyer's prior representation of PSI. This, too, is evident from the undisputed facts of record. It is apparent that PSI retained Allen, Dyer to help it perform certain obligations PSI had under the Agreement to prosecute applications to protect the Licensed Rights relating to the sale of the Product (Doc. No. 15, Exhibit 1, Paragraph 13(b)). Additionally, PSI retained Allen, Dyer to act as co-counsel in state litigations against competitors relating to PSI's distributorship of the Products. (*See* Doc. No. 15, Exhibit 1, Paragraph 13(e) and Doc. No. 14, Exhibits A, B and C). These actions were for the benefit of both Keepsake and PSI, and were founded on PSI's business relationship with Keepsake, as set forth in the Distributorship Agreement. Indeed, had the business relationship not existed, PSI would not have been able to prosecute the patent applications, register the trademarks or assert exclusive rights against a competitor. These actions were undertaken to protect and advance PSI's distributor rights under the Agreement. Having undertaken to protect and advance PSI's business interest, Allen Dyer can not now, without consent, represent an adverse party in litigation regarding the extent of and limitations on those interests.[3]

The motion to disqualify Plaintiff's counsel is Granted. Plaintiff will be given 11 days from this Order to retain new counsel. The action is stayed until a Notice of Appearance of new counsel has been filed, with Defendants response to the Complaint due 11 days from the filing of that Notice.

---

[3] The Court finds Allen, Dyer's attempts to minimize its role as counsel unpersuasive. A lawyer-client relationship either exists (either in fact or implication) or it does not. A lawyer's duty is to the client, not to the particular matter the client brings to the lawyer. Allen, Dyer's implicit distinction between "little" clients and "big" clients is without any legal or ethical support. Moreover, it is not relevant whether any actual confidences were disclosed. If the substantial relationship test is met, "it is not appropriate for the court to inquire into whether actual confidences were disclosed." *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1267 (7th Cir.1983) (internal citation omitted).